# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

WADE DOUG TARVER,              )
                               )
        **Plaintiff,**         )
                               )
v.                             )    Case No. CIV-14-292-SPS
                               )
CAROLYN W. COLVIN,             )
**Acting Commissioner of the Social** )
**Security Administration,**   )
                               )
        **Defendant.**         )

## OPINION AND ORDER

The claimant Wade Doug Tarver requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born December 31, 1966, and was forty-six years old at the time of the most recent administrative hearing (Tr. 455). He has a seventh grade education and has no past relevant work (Tr. 430, 455). The claimant alleges that he has been unable to work since July 1, 2006, due to high blood pressure, kidney damage, brain damage, seizures, vision problems, depression, and bipolar disorder (Tr. 168, 857).

**Procedural History**

On August 14, 2007, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 839-42). His application was denied. ALJ Lantz McCain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 26, 2009 (Tr. 763-72). The Appeals Council denied review, but this Court reversed the decision of the Commissioner on September 28, 2011, in Case No. CIV-10-258-SPS, and remanded the case to the ALJ with instructions to properly assess the GAF scores in the record[2] (Tr. 1253-62).

While his initial application was pending before the Appeals Council and prior to this Court's September 28, 2011, decision, the claimant filed a second application for supplemental security income payments (Tr. 154-57). ALJ Gene M. Kelly conducted an administrative hearing and determined the claimant was not disabled in a written opinion dated January 14, 2011 (Tr. 30-39). The Appeals Council denied review, but pursuant to

---

[2] The claimant has again argued that the ALJ failed to properly consider the GAF score. The Court notes that although it is not the primary reason for reversal, the ALJ should nevertheless on remand properly consider *all* the evidence in the record, including any GAF scores.

the Commissioner's Unopposed Motion to Remand, this Court reversed the decision of the Commissioner in Case No. CIV-12-228-SPS and remanded the case to the ALJ on January 22, 2013 (Tr. 535-37). After the claimant's two claims were consolidated, ALJ Lantz McCain conducted an administrative hearing and a supplemental hearing, and determined the claimant was not disabled in a written opinion dated April 25, 2014 (Tr. 411-32, 439-80, 1214-35). The Appeals Council denied review, so the ALJ's April 25, 2014, written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work, *i.e.*, he could lift/carry ten pounds frequently and twenty pounds occasionally, and sit/stand/walk six hours in an eight-hour workday (Tr. 419). Due to psychologically based symptoms, the ALJ found the claimant could perform simple, repetitive tasks; could relate to his supervisors and co-workers superficially; and could not work with the general public (Tr. 419). The ALJ concluded that the claimant was not disabled because there was work he could perform in the regional and national economies, *e. g.*, remnant sorter and production assembler (Tr. 431).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) evaluate the opinions of consultative examiners, Dr. Krishnamurthi and Dr. Quadeer; (ii) consider the Global Assessment of Functioning (GAF) score assessed by licensed professional

counselor, Ms. Self; and (iv) assess his residual functional capacity. The undersigned Magistrate Judge finds that the ALJ *did fail* to property assess the evidence at step four, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant's obesity, hypertension, depression, and anxiety were severe impairments; that his history of substance abuse, poor vision, seizure, and hypertensive encephalopathy were nonsevere; and that his allegations of stroke, renal damage, and renal artery stenosis were medically nondeterminable (Tr. 414-16). The medical evidence relevant to this appeal shows the claimant presented to the Muskogee Regional Medical Center Emergency Department (MRMC) on July 17, 2006, with complaints of hematuria, nausea, and vomiting (Tr. 1008-13). He was diagnosed with hypertensive urgency and a kidney stone and transferred to South Crest Hospital in Tulsa due to a lack of available beds at MRMC (Tr. 928, 1012). However, a renal ultrasound performed the following day was normal and a CT scan of his pelvis and abdomen revealed decreased attenuation involving the left kidney, minimal left base atelectasis, but no renal or ureteral calculus, and the claimant was diagnosed at South Crest with hematuria and hypertension (Tr. 929, 936-39). On July 18, 2007, the claimant again presented to MRMC with complaints of dizziness and vomiting, and had a seizure and collapsed in the lobby (Tr. 1039-49). He was in hypertensive urgency on presentation, and a toxicology screen conducted that day was positive for marijuana and benzodiazepines (Tr. 1047). The claimant received medication which successfully lowered his blood pressure, was counselled regarding his substance abuse history, and was discharged with dietary restrictions (Tr. 1035-38).

The claimant had a total of five physical consultative examinations between September 2006 and November 2010 (Tr. 285-92, 387-95, 397-405, 951-56, 1110-16), but only two are relevant to this appeal (Tr. 285-92, 387-95). Dr. Quadeer performed a physical consultative examination on August 8, 2009, noting the claimant had tenderness and muscle spasms in his lumbar-sacral spine at L4\L5 as well as decreased range of motion, and that the claimant's cervical spine and thoracic-lumbar spine were non-tender and had full range of motion (Tr. 287-88, 290). Additionally, Dr. Quadeer noted the claimant had a safe and stable gait, but could not do heel walking or toe walking (Tr. 287). Dr. Quadeer reported the claimant's history included hypertension not under control with medication, vision problems, anxiety, depression, bipolar disorder, chest discomfort, brain damage from seizures that causes hallucinations, problems with anger management, and an inability to hold a job (Tr. 287).

On November 19, 2010, Dr. Krishnamurthi evaluated the claimant and completed a medical source statement (Tr. 387-95). The claimant informed Dr. Krishnamurthi that his medical history included high blood pressure, back pain for the past two years, shortness of breath on exertion, dizziness, vision problems, memory problems, numbness in his feet, insomnia, and a seizure disorder (Tr. 393-94). Dr. Krishnamurthi noted the claimant's gait was normal, but slow due to back pain, and that the claimant's range of motion in his hips was slightly reduced due to pain and obesity (Tr. 395). He opined that the claimant could lift/carry up to ten pounds frequently, up to twenty pounds occasionally, and could never lift anything above twenty pounds (Tr. 387). Dr. Krishnamurthi also opined that the claimant could sit for one hour at a time and

stand/walk for ten to thirty minutes at a time without interruption (Tr. 388). In an eight-hour work day, Dr. Krishnamurthi found the claimant could sit for six hours total and could stand/walk for one hour total (Tr. 388). Dr. Krishnamurthi found the claimant's postural limitations included occasional climbing stairs, ramps, ladders, or scaffolds; balancing; stooping; kneeling; crouching; and crawling (Tr. 390). As to the claimant's environmental limitations, Dr. Krishnamurthi found the claimant could tolerate frequent exposure to unprotected heights; moving mechanical parts; operating a motor vehicle; dust, fumes, odors, and pulmonary irritants; however, he could only tolerate occasional exposure to humidity and wetness, extreme cold, and extreme heat and needed to work in an environment with a moderate exposure to noise (Tr. 391).

At the administrative hearing on June 10, 2013, the claimant testified he has anxiety attacks and audio and visual hallucinations almost daily and has thoughts of hurting others a "couple times a week," but was not receiving mental health treatment because his current medications already made him sleepy and he did not want to take any more (Tr. 460). He further testified that he had back pain due to a herniated disc, shoulder pain due to a torn rotator cuff, and that his kidneys were "ready to shut down" (Tr. 461-62). He testified he sleeps eight hours total in a day and that he was unable to walk twenty yards without needing to stop and rest (Tr. 464-65). As to his pain, he stated he takes only acetaminophen and that his pain affects his ability to concentrate (Tr. 467-68). As to his daily activities, he stated he does not grocery shop, cook, clean, work in the yard, do laundry, or leave his home, and has no hobbies (Tr. 468-69).

In his written opinion, the ALJ summarized the claimant's testimony, the claimant's wife's Third Party Function Reports, as well as the medical evidence. The ALJ thoroughly summarized Dr. Quadeer's opinion, but did not provide any analysis or assign any weight with regard to his assessment (Tr. 423-24). The ALJ gave great weight to Dr. Krishnamurthi's opinion and adopted some, but not all of the limitations in Dr. Krishnamurthi's opinion when forming the claimant's RFC (Tr. 425).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ gave great weight to Dr. Krishnamurthi's opinion; however, he rejected without explanation Dr. Krishnamurthi's postural, standing, and

walking limitations (although he noted them), and entirely ignored Dr. Krishnamurthi's opinions as to the claimant's environmental limitations (Tr. 419, 425). The ALJ should have explained why he found certain aspects of Dr. Krishnamurthi's findings persuasive but not others. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others."). This was a significant omission in this case because Dr. Krishnamurthi's opinion questions whether the claimant is capable of performing light work because he opined that the claimant could stand/walk for one hour total in an eight hour workday. Furthermore, the ALJ summarized Dr. Quadeer's report, but provided no analysis at all in relation to the pertinent factors. This is likewise important because Dr. Quadeer raised questions about the claimant's ability to hold a job due to his difficulty with anger management and hallucinations. The Commissioner argues that Dr. Krishnamurthi's postural and standing/walking limitations are contradicted by other evidence in the record and that Dr. Quadeer's statements were based solely on the claimant's subjective reports (which the ALJ found not fully credible); however, the ALJ offered no such explanation for declining to impose any correlating restrictions when forming the claimant's RFC. *See, e.g., Haga v. Astrue,* 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may

not create or adopt post hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Because the ALJ failed to analyze probative evidence potentially inconsistent with his RFC determination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**